# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

FILED
CLERK

7/11/2025 11:14 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

№ 12-CR-00317 (JFB)

ANGEL VASQUEZ,

Petitioner,

VERSUS

UNITED STATES OF AMERICA

Respondent.

**MEMORANDUM AND ORDER**
July 11, 2025

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Angel Vasquez ("Vasquez" or "petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate his conviction and sentence. (Petition, ECF No. 123 ("Pet.").) On August 14, 2015, petitioner entered a guilty plea to two counts of a superseding indictment and, on November 17, 2016, this Court sentenced petitioner to nineteen years' imprisonment. (ECF Nos. 105, 120.)

In the instant petition, Vasquez challenges his conviction, claiming that he is actually innocent of the charges that were the subject of his conviction and that his constitutional rights were violated because of ineffective assistance of counsel. (Pet., at 2–

6.) For the reasons set forth below, the petition is denied.

## I.    BACKGROUND

### A.  Factual Background

The following facts are adduced from the instant petition and underlying record.

On August 14, 2015, petitioner entered a guilty plea to two counts of a superseding indictment, charging him with conspiracy to commit murder in aid of racketeering (Count Three) and attempted murder in aid of racketeering (Count Eight), both in violation of 18 U.S.C. § 1959(a)(5). (Plea Transcript, ECF No. 141, Ex. 4 ("Plea Tr.").)

During the plea proceeding, the Court confirmed that petitioner was competent to

1

proceed with the plea. (*Id.* at 3–4.) Petitioner stated that he discussed any available defenses with his defense counsel and that he was satisfied with counsel's representation. (*Id.* at 4–5.) The Court then explained the constitutional rights petitioner was forfeiting by choosing to plead guilty. (*Id.* at 5–8.)

The Court also summarized the two charges petitioner was pleading guilty to, stating: "[C]ount [T]hree charges you with conspiracy to murder Luis Castro. Specifically it charges that . . . in or about October of 2009 that you, together with other members of the MS-13 gang, conspired knowingly and intentionally to murder Mr. Castro in violation of New York Penal Law for the purpose of maintaining and increasing your position in the MS-13 gang. Count [E]ight charges that on or about December 23, 2010, that you, again together with others, knowingly, intentionally attempted to murder someone then identified as John Doe No. 2 in violation of New York Penal Law, again for the purpose of maintaining, increasing your position in the MS-13 street gang." (*Id.* at 8–9.) Petitioner confirmed that he understood the maximum penalties that resulted from his guilty plea, including that each charge carried a maximum term of ten years' imprisonment and that each term could run consecutively to the other and result in a twenty-year term of imprisonment. (*Id.* at 9–11.)

The Court then confirmed that petitioner had entered into a plea agreement with the government and that petitioner understood the contents of the agreement. (*Id.* at 14–16.) The Court specifically noted that the plea agreement included an appellate waiver, in which petitioner agreed that, if the Court sentenced him to 240 months' imprisonment, the combined statutory maximum term of imprisonment, or less, he was giving up his right to appeal or collaterally attack his conviction and sentence. (*Id.* at 15–16.)

Prior to proceeding with a factual allocution, the Court also confirmed that no one had made any threats or promises to petitioner to influence his choice to plead guilty. (*Id.* at 17.)

Petitioner then admitted that he had been a member of the MS-13 gang since 2006, and explained the particular acts that made him guilty of Counts Three and Eight:

In 2009 several fellow MS-13 members told me they wanted to kill Luis Castro on [February 4] because they believed he was a member of a rival gang called 18th Street. Later that night me and Castro and other MS-13 members got into a car in Nassau County and began driving by another MS-13 member. The car traveled to a dark road in Huntington at which time the car stopped.

The group then got out of the car and I realized that Castro was going to be killed. The other members of the group began to stab Castro. I was handed a knife by other members and at one point forward then I also stabbed Castro . . . . Other members then fled and I learned later that Castro died.

On December 23, 2010, I was hanging out at the El Pacifico bar in Hempstead. At one point I was involved with MS-13 members in a dispute with other individuals.

I then observed [the] group leave the bar being followed by my fellow MS-13 members. Once they were outside, I saw an altercation start between the other group and my fellow MS-13 members, gang members, so I quickly ran outside to

support my fellow members at which time I participated in a fight against the other group during which I punched and kicked John Doe No. 2. Some of the other MS-13 members stabbed two of the people in the other group including John Doe 2.

I engaged in all of [these] acts to maintain my position in the MS-13. I knew what I was doing was wrong and against the law.

(*Id.* at 18–19.)

The Court then asked petitioner a series of questions to elicit more details regarding the two crimes and explained the elements that the government would have to prove beyond a reasonable doubt if petitioner were to choose to proceed to trial. (*Id.* at 19–25.) The government then summarized the evidence that would have been presented at trial. (*Id.* at 25–28.)

At the conclusion of the proceeding, petitioner again acknowledged that he was guilty of both charges and that he was entering his plea voluntarily and of his own free will. (*Id.* at 28–29.) Based on the allocution, the Court found that petitioner's guilty plea was entered knowingly and voluntarily, and adjudged him guilty of Counts Three and Eight of the superseding indictment. (*Id.* at 29.)

Petitioner was sentenced on November 17, 2016. The Court determined that, under the United States Sentencing Guidelines, petitioner's total offense level was 41, with a Criminal History Category IV, resulting in an advisory Guidelines range of 240 months' imprisonment because the applicable range was limited by the combined statutory maximum. (Sentencing Transcript, ECF No. 137, Ex. 7 ("Sent. Tr."), at 7, 8, 31.) After hearing from both sides, the Court sentenced petitioner to a total term of 228 months' imprisonment, consisting of 120 months on Count Three to run consecutively to 108 months on Count Eight. (*Id.* at 38.)

### B. Procedural History

Petitioner did not directly appeal his conviction or sentence, but instead filed the instant petition. In his petition, petitioner claims that he is entitled to relief under Section 2255 because he is actually innocent of the crimes to which he pled guilty and because of alleged ineffective assistance of counsel with respect to his guilty plea. (Pet., at 2–6.) Further, petitioner contends that he is entitled to an evidentiary hearing. (*Id.* at 4.) The government filed a response, arguing that petitioner's appellate waiver and guilty plea bar his collateral attack to his conviction and sentence, and that his claims are without merit. (Government's Letter Brief in Opposition, ECF No. 137 ("Opp. Br.").)

After receiving the submissions, the Court issued an order directing petitioner's former defense counsel, John S. Wallenstein and Kevin J. Keating, to submit affidavits responding to the claims in the instant petition as related to their representation. (ECF No. 131.) Both Mr. Wallenstein and Mr. Keating submitted affidavits under seal in response to that order. (Wallenstein Decl., ECF No. 133 ("Wallenstein Decl."); Keating Affirmation, ECF No. 132 ("Keating Aff.").)[1]

---

[1] Mr. Wallenstein represented petitioner from approximately April 2012 through August 7, 2014, when Mr. Keating was substituted as counsel. (Wallenstein Decl., at 1–2.) Mr. Keating then represented petitioner through petitioner's sentencing, including the guilty plea proceeding. (Keating Aff., at 1–2.)

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when the petitioner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).    If petitioner raises a claim in a § 2255 motion has not been previously raised on direct appeal, generally, the claim is procedurally barred unless the petitioner can show cause and prejudice or actual innocence.    *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998).    However, this bar does not apply to claims of ineffective assistance of counsel; the Supreme Court has stated that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504.

With respect to the issue of an evidentiary hearing, Section 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28

U.S.C. *foll.* § 2255. The Second Circuit has made clear that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)).    The Second Circuit has provided guidance on how a district court should determine when an evidentiary hearing is necessary. *See id.* at 213–15. In particular, the Court noted that, given the absence of pre-motion discovery in a § 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court . . . ." *Id.* at 213–14.

Further, "the district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Thus, there are scenarios where the district court can exercise its "discretion to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing" and may determine that a full hearing "would add little or nothing to the written submissions." *Id.*

In the instant case, applying the above-referenced standard, the Court concludes that no evidentiary hearing is warranted because petitioner's motion, the underlying record, and the now expanded record that includes sworn statements from defense counsel, conclusively demonstrate that he is entitled to no relief under Section 2255. The sworn statements are sufficiently detailed, and

petitioner has identified no additional documents outside the record that could aid the Court in making its determination. Thus, an evidentiary hearing on petitioner's claims is unwarranted.

### III.   DISCUSSION

Petitioner argues that he is entitled to relief under Section 2255 because he is actually innocent of the crimes to which he pled guilty and that his attorneys provided ineffective assistance of counsel.

As is set forth below, the Court finds that petitioner's claims are without merit. Petitioner failed to establish that he is actually innocent of the crimes he pleaded guilty to and failed to demonstrate that counsel's performance fell below an objective standard of reasonableness, or that there is a reasonable probability that but for counsel's alleged errors the result of the proceedings would have been different. Accordingly, the Court denies the petition in its entirety.

### A.  Collateral Attack Waiver

As an initial matter, the government argues that petitioner's guilty plea and accompanying waiver of his right to appeal or collaterally attack his conviction or sentence prevents the Court from considering petitioner's claims. (Opp. Br., at 12-14.)

Generally, "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998) (per curiam). Such a waiver of the right to appeal can include petitions for relief under Section 2255. *See, e.g., Garcia-Santos v. United States,* 273 F.3d 506, 508 (2d Cir. 2001) (per curiam), *Lisnoff v. United States*, No. 05-cv-1209 (NGG), 2006 WL 1367413,

at *2–3 (E.D.N.Y. May 18, 2006). However, to the extent petitioner is raising ineffective assistance of counsel claims, these "survive[] the guilty plea or the appeal waiver only where the claim concerns the advice the defendant received from counsel." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (alteration adopted) (internal quotation marks and citation omitted).

In the instant case, petitioner entered into a plea agreement, which included an agreement not to file an appeal or otherwise challenge his conviction or sentence by petition pursuant to Section 2255, in the event that the sentence was 240 months or below. (ECF No. 141, Ex. 5, at 5.) Thereafter, the Court imposed a term of imprisonment of 228 months, a term within the scope of the waiver. Further, the record of the guilty plea demonstrates that petitioner executed the waiver intelligently and voluntarily. As noted above, during the plea proceeding, the Court reviewed the waiver's provisions with petitioner, confirming that he understood the contents of the waiver and that he was freely proceeding with the waiver. (Plea Tr., at 15–16.) The Court finds the waiver enforceable, as the record reflects a knowing and voluntary waiver of petitioner's right to collaterally attack his sentence.

Accordingly, with the exception of his claims for ineffective assistance of counsel (which are unaffected by the waiver), any other challenges to his conviction and sentence are precluded by the plea agreement.

### B.  Effect of Guilty Plea

Even apart from petitioner's waiver of his right to file a petition pursuant to Section 2255, the underlying record reflects that the guilty plea itself was knowing and voluntary, thus providing an additional ground for foreclosing any challenges to his conviction

(again other than ineffective assistance of counsel claims) based upon events prior to his guilty plea.

A knowing and voluntary guilty plea precludes a habeas petitioner from challenging the legality of events occurring prior to the entry of his guilty plea. *See Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."); *accord Whitehurst v. Senkowski*, 485 F. Supp. 2d 105, 117–18 (N.D.N.Y. 2007); *Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005); *see also Lynch v. Connell*, No. 06-CV-0027, 2009 WL 789428, at *3 (W.D.N.Y. Mar. 20, 2009) (collecting cases). "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). As such, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentation, or perhaps by promises that are by their nature improper . . . ." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (alterations adopted) (internal quotation marks and citations omitted). When considering the validity of a guilty plea, courts look to the sworn statements made during a plea allocution, noting that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Clearly, "[c]laims by petitioners that their pleas were involuntarily made due to the erroneous advice or unrealized promises

made by counsel 'afford an all to[o] easy avenue for the invalidating of conviction[s] on pleas of guilty.'" *Hernandez v. United States*, 839 F. Supp. 140, 143 (E.D.N.Y. Nov. 8, 1993) (quoting *United States v. Horton*, 334 F.2d 153, 154 (2d Cir. 1964)). Further, "[a] criminal defendant's self-inculpatory statements made under oath at [a] plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them . . . ." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999).

The Court has reviewed the underlying record and finds the guilty plea was made voluntarily and intelligently. Prior to accepting his plea, the Court confirmed that petitioner was competent and that he understood the rights he was forfeiting by pleading guilty, explained the maximum sentences he faced and the elements of both the crimes, proceeded with a detailed factual allocution, and ensured that petitioner's decision to plead was not a result of any inducement. (Plea Tr. at 3–29.)

Thus, as petitioner entered a valid guilty plea, his subsequent claims that refer to events prior to the plea (other than ineffective assistance of counsel claims) are foreclosed.

## C. Ineffective Assistance of Counsel

The Court first discusses the applicable legal standard then proceeds to review each ground for ineffective assistance of counsel set forth in the petition, finding each to be without merit.

### 1. Legal Standard

Under the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to prevail on a claim of

ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires petitioner to show that counsel's performance was deficient. To demonstrate a deficient performance, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms.'" *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688, 694). However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance, if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* at 588 (quoting

*Strickland*, 466 U.S. at 690). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine confidence in the outcome." *Id.* "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Additionally, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet, v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (internal quotation marks and citation omitted).

"In the context of a guilty plea, *Strickland's* prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Munson v. Rock*, 507 F. App'x. 53, 56 (2d Cir. 2013)

(summary order) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

### 2.    Analysis

#### a.    Failure    to    Challenge Sufficiency of the Evidence

Petitioner claims that he received ineffective assistance of counsel because his defense counsel failed to challenge the sufficiency of the evidence. (Pet., at 2.) The government responded that "[t]his assertion is conclusory and does not give any specific mention to exactly what non-challenged evidence prejudiced the [petitioner]." (Opp. Br., at 16.)

The Court notes that "[c]onclusory allegations of counsel's deficient performance will not sustain a § 2255 petition." *Reese v. U.S.*, No. CV-04-4338 (DGT), 2006 WL 2711610, at *3 (E.D.N.Y. Sept. 21, 2006). Here, petitioner asserts in a conclusory fashion that defense counsel failed to attack the evidence in this case, but his claim is unsubstantiated, and petitioner fails to point to what evidence defense counsel failed to challenge. Indeed, his claim is contradicted by the sworn statements of defense counsel, which describe in detail the efforts made to investigate and challenge the government's case. (Wallenstein Decl., at 2–3; Keating Aff., at 2–3.) In sum, petitioner's conclusory allegation regarding defense counsel's failure to challenge the sufficiency of the evidence does not demonstrate deficient performance and, in any event, petitioner is unable to demonstrate the requisite prejudice. *See Hernandez v. Larkin*, No. 12-cv-8090 (AJN) (SN), 2013 WL 4453316, at *12 (S.D.N.Y. Aug. 19, 2013)

("A self-serving post-conviction statement does not, standing alone, establish prejudice.").

#### b.    No    Expert    Witness Regarding Juveniles

Petitioner claims that defense counsel was constitutionally ineffective "for not obtaining [an] expert witness to testify concerning juvenile conviction[s] in conjunction with their lack of mature insight or maturity [as juveniles are] not able to [discern] adapt or [correlate the] realistic consequences of their actions." (Pet., at 2.) That claim is flatly contradicted by the record. In particular, when the government moved to transfer petitioner's juvenile case to adult status, defense counsel consulted with Dr. Naftali Berrill, a forensic psychologist. (Wallenstein Decl., at 3.) Dr. Berrill examined petitioner, wrote a detailed report explaining why he should continue to be treated as a juvenile, and testified as a defense witness at the hearing on the motion to transfer petitioner to adult status. (*Id.*) The Court ultimately granted the government's motion and defense counsel appealed that decision to the Second Circuit, which affirmed this Court's decision. Therefore, although defense counsel's efforts were unsuccessful, petitioner has failed to show any deficient performance with respect to the expert witness, or more generally in connection with the government's motion to transfer him to adult status.

#### c.    Failure to Investigate

Petitioner contends that he received ineffective assistance of counsel because defense counsel failed to adequately investigate the case and did not follow up with witnesses that petitioner wished to be called to testify on his behalf. (Pet., at 3.)

Generally, while investigating a case,

8

"[d]efense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Rosario v. Ercole*, 601 F.3d 118, 130 (2d Cir. 2010) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). "In the context of an ineffectiveness claim, 'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Weingarten v. United States*, 700 F. App'x 43, 45 (2d Cir. 2017) (summary order) (quoting *Strickland*, 466 U.S. at 691). Counsel's duty to make reasonable investigations does not "compel defense counsel to investigate comprehensively every lead or possible defense, or to scour the globe on the off-chance something will turn up." *Greiner*, 417 F.3d at 321 (internal quotation marks and citations omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

"Where the alleged misconduct by counsel is failure to investigate or discover potentially exculpatory evidence, the decision not to investigate must have been a decision not supported by reasonable professional judgment." *Baran v. United States*, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). Therefore, "[p]ost-hoc complaints about the strategy or tactics employed by trial counsel, or complaints that trial counsel did not conduct a sufficiently vigorous pretrial investigation, are typically found to be insufficient to satisfy *Strickland*." *Agyekum v. United States*, 01-CIV-5808 (RWS), 2002 WL 1000950, at *5 (S.D.N.Y. May 16, 2002)

(citations omitted).

First, petitioner's conclusory claim that defense counsel failed to investigate the case is contradicted by each defense counsel's sworn statements in which they discuss the investigative steps to review all the evidence related to his case. (*See* Wallenstein Decl., at 3–4; Keating Aff., at 3.) For example, Mr. Wallenstein spoke to petitioner and his family in an attempt to gather more information to assist in his defense, but those efforts were not helpful. (Wallenstein Decl., at 4.) Mr. Wallenstein also hired an investigator who was similarly unsuccessful in his ability to locate any additional information that might help in petitioner's defense. (Wallenstein Decl., at 4.) Mr. Keating undertook similar efforts to defend petitioner by reviewing extensive discovery in this case to enable him to investigate the matter fully. (Keating Aff., at 3.) Petitioner does not explain what additional investigation that he wished defense counsel had undertaken and, thus, failed to demonstrate deficient performance. In any event, petitioner also failed to articulate how the additional investigation would have altered the case, or his decision-making with respect to the guilty plea in any way and, therefore, failed to demonstrate prejudice. In short, his claim for failure to investigate does not provide a basis for relief in this case under Section 2255.

### d. Not Utilizing Extreme Disturbance Defense

Petitioner asserts that he received ineffective assistance of counsel when his defense counsel did "not utiliz[e] [the] extreme disturbance defense" due to the fact that he was a juvenile surrounded by gang violence in his youth. (Pet., at 3.)

"Generally, the decision whether to

pursue a particular defense is a tactical choice which does not rise to level of a constitutional violation." *Jones v. Hollins*, 884 F. Supp. 758, 765 (W.D.N.Y. 1995), *aff'd*, 89 F.3d 826 (2d Cir. 1995). "Counsel is not required to present every nonfrivolous defense, but instead, should 'winnow out weaker arguments' and select witnesses and evidence that reflect counsel's strategy." *Osorio v. Conway*, 496 F. Supp. 2d 285, 304 (S.D.N.Y. 2007) (quoting *Jones v. Barnes*, 463 U.S. 745, 746 (1983)). Therefore, a "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *DeLuca*, 77 F.3d at 588 n.3.

The Court concludes that petitioner's characterization of the emotional disturbance defense is flawed. Pursuant to New York State law, the extreme emotional disturbance defense is a partial affirmative defense raised when one is "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." N.Y. Penal Law § 125.25(1)(a)(i). Petitioner does not explain how the extreme emotional disturbance defense is applicable to the state crimes that formed the basis of the federal charges to which he pled guilty. Moreover, there is no evidence in the record that would support such a defense in this case. Indeed, both defense counsel stated that they did not believe there were any defenses that were viable. (Wallenstein Decl., at 4; Keating Aff., at 4.) In short, petitioner has failed to demonstrate how that defense would have prevailed in this case and, thus, cannot demonstrate deficient performance or prejudice as it relates to this claim.

e.  Failure to Protect from a Harsh Sentence and to Argue Lack of Mens Rea

Petitioner contends that he received ineffective assistance of counsel because he was not protected by his defense counsel from a harsh sentence. (Pet., at 3.) The Court disagrees.

Through defense counsel's efforts, a plea agreement with a maximum sentence of 240 months was reached, even though, in the absence of the agreement, the defendant faced a potential mandatory life sentence if convicted on all counts. In addition, defense counsel filed a detailed sentencing submission on petitioner's behalf and successfully obtained a below-Guidelines sentence of 228 months' imprisonment. In sum, there is no merit to petitioner's claim that defense counsel was deficient either in the plea negotiations or in the sentencing phase of the case.

Petitioner also argues that "no Mens Rea [was] proven beyond a reasonable doubt for guilt of the murder being done by the petitioner." (Pet., at 3.) However, as the government notes, petitioner's sworn allocution contradicts this argument. Specifically, during petitioner's guilty plea, he stated that he stabbed Mr. Castro, and that he committed his criminal acts knowingly and intentionally. (Plea Tr., at 18, 22.)

As noted above, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Accordingly, the Court rejects petitioner's belated assertion that the evidence failed to establish *mens rea*, as it is contradicted by petitioner's plea allocution where he directly admitted to his knowing, intentional, and unlawful conduct.

f.  Failure to Suppress the

10

Government's Evidence

Petitioner argues that defense counsel was ineffective for failing to "suppress the prosecution[']s evidence and uncorroborated testimony from informant turned government witness." (*See* Pet., at 3.) The government responds:

> First off, there was no trial so no cooperating witnesses testified. However, even had the matter proceeded to trial the testimony of all cooperating witnesses would have been corroborated as per the extensive evidentiary proffer provided by the government at the time of the defendant's guilty plea . . . . Additionally, Mr. Wallenstein did make a suppression motion but the motion was withdrawn by Mr. Keating after consulting with the defendant, once Mr. Keating had the opportunity to test the strength of the government's case and after he secured what the defense believed was a favorable plea disposition.

(Opp. Br., at 19.)

"In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990). Significantly, "failure to make a suppression motion is not *per se* ineffective representation, where trial counsel fails to make a motion to suppress because he neglected to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, then ineffective representation is shown." *Id.* at 33 (internal quotation marks

and citations omitted).

The sworn statements from both defense counsel demonstrate thorough investigations that included the initial filing of a suppression motion by Mr. Wallenstein. Mr. Keating withdrew the motion only after obtaining a favorable plea agreement for the petitioner. Mr. Keating stated that he was "unaware of any viable motions that were available which could have addressed this assertion made by Vasquez [regarding the testimony of an informant]" and "thoroughly reviewed all the facts and circumstances of this case." (Keating Aff., at 4.) Accordingly, the Court discerns no deficient performance in the withdrawal of the suppression motion or the failure to make other motions, especially in light of the favorable plea deal negotiated by defense counsel.

g. No Filing a *Sears* Motion

Petitioner asserts that defense counsel was ineffective by failing to file a *Sears* motion. (Pet., at 3.)

It is well-settled that "[a]n attorney's [f]ailure to make a meritless argument does not constitute ineffective assistance." *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (summary order) (quoting *United States v. Arena*, 180 F.3d 380, 386 (2d Cir. 1999)).

Petitioner claims that a *Sears* motion was required because there can be "[n]o indictable conspiracy between [a] government agent and [a petitioner] . . . ." (Pet., at 3); *see Sears v. United States*, 343 F.2d 139 (5th Cir. 1965). However, as the government correctly notes, only one of petitioner's convictions is a conspiracy charge and, with respect to that charge, petitioner allocuted to agreeing to commit that murder with a number of other MS-13 members. (Plea Tr., at 18.)

11

Moreover, the government represents to the Court that "at no time prior to the murder of Castro were any of the defendant's co-conspirators working as an informant for the government." (Opp. Br., at 20.)

In sum, petitioner has failed to articulate how a *Sears* motion would have had any merit and, therefore, defense counsel's performance was not deficient in failing to file such a motion.

### h. Withholding Material Facts and Exerting Pressure to Induce the Guilty Plea

Petitioner contends that defense counsel was constitutionally ineffective by "misrepresent[ing] [] material facts[,] withholding information and exerting pressure on [a] juvenile defendant to induce [his] guilty plea" and that he would not have pled guilty otherwise. (Pet., at 4.)

As a threshold matter, "[s]elf-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." *Blumenberg v. United States*, No. 05 Civ. 9416 (JGK), 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009) (citing *United States v. Torres*, 129 F.3d 710, 715-17 (2d Cir. 1997)); *see also Hernandez*, 2013 WL 4453316, at *12 ("A self-serving post-conviction statement does not, standing alone, establish prejudice."). Moreover, the sworn statements by defense counsel refute that conclusory allegation. For example, Mr. Wallenstein stated:

I have never, in more than 40 years of practice, engaged in that kind of conduct. Aside from the lack of specificity, which makes this allegation unanswerable, I can emphatically state that nothing of this sort ever occurred. Vasquez was

informed every step of the way about the discovery, what it revealed, what it didn't, and we discussed the evidence when he decided to reject the Government's plea offer and stand trial. At the time I was relieved, we were awaiting litigation of motions and preparing for trial. When the Government's plea offer was viable and he was considering what the best course would be, I discussed with him the pros and cons of accepting or rejecting a plea, and what he could expect if there were a trial . . . . Together, we reviewed documents and photographs, forensic reports, and narrative reports made by law enforcement agents, and talked about what they might mean to a jury. We discussed in detail the sentencing options in the context of the then-viable plea offer.

Wallenstein Decl., at 5–6. Mr. Keating similarly stated that he "did not misrepresent any material facts to Vasquez in an effort to exert pressure or induce him to enter a guilty plea in this matter." (Keating Aff., at 5.) In addition, in his plea proceeding, petitioner stated under oath that no one had induced him, or forced him, to plead guilty. (Plea Tr., at 17.)

In short, petitioner's unsubstantiated, conclusory claim—which is contradicted by his own sworn statement at the guilty plea and defense counsels' sworn statements—does not provide a basis for relief under Section 2255.

### i. Not Utilizing Video Statement Constituted a *Brady* Violation

Petitioner argues that defense counsel's failure to utilize petitioner's videotaped

statement amounted to a *Brady* violation. (Pet., at 4–5.)

Generally, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Petitioner has not explained how the video statement in this matter was exculpatory, nor how the video was suppressed since it was possessed by defense counsel. Indeed, at sentencing, defense counsel referenced his review of the videotape. (Sent. Tr., at 9–10.) In his affirmation, Mr. Keating confirmed that he "conducted a detailed review of the nine hour videotape of Vasquez's interview." (Keating Aff., at 5.) Therefore, petitioner has failed to demonstrate that there was any *Brady* violation or that his counsel's performance was deficient in failing to utilize that video in an effective manner.

> j.  Additional Ineffective Assistance of Counsel Claims

Petitioner lists additional claims, exclusively by reference without providing background support for any of these claims. The additional claims include that petitioner was not allowed to notify a lawyer or his parents at the time of his arrest, that defense counsel failed to file fact-finding motions, and that there is a separation of powers issue because his indictment failed to list the essential elements of the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute. (Pet., at 4–5.)

The Court again finds that these conclusory claims failed to establish that

defense counsel were ineffective in their representation of him as it relates to these issues, including with respect to legal advice they provided regarding his guilty plea. Nor does petitioner articulate how any deficient performance in these respects would have altered his decision to plead guilty. Thus, these ineffective assistance claims are without merit.

Moreover, to the extent that petitioner further argues that defense counsel were constitutionally ineffective for making "to[o] many cumulative errors that prejudiced [petitioner's] opportunity at a fair result in his trial and court proceedings" (Pet., at 2.), the Court similarly finds that vague claim to be without merit.

### D.  Actual Innocence

Petitioner also argues that he is entitled to relief because he "is actually and factually innocent of the crimes he has been accused of committing." (Pet., at 5.) As a threshold matter, because there has been no procedural default in connection with the Section 2255 motion, petitioner need not demonstrate actual innocence to have his arguments reviewed by this Court. *Cf. United States v. Peña*, 58 F.4th 613, 621 (2d Cir. 2023) (explaining that, a "defendant can raise new arguments in a § 2255 motion if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence" (internal quotation marks and citation omitted)). In any event, his actual innocence claim has no merit.

As emphasized *supra*, "[a] criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them . . . ." *Adames*, 171 F.3d at 732 (internal quotation marks and citations omitted). Here,

petitioner provided a detailed factual allocution during the plea proceeding that established his guilt and he has not offered any evidentiary support for his assertion that he is innocent of the crimes to which he pled guilty. Therefore, there is no basis for any claim of actual innocence.

### III.    CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for relief under Section 2255. Accordingly, this petition for a writ of habeas corpus is denied in its entirety. Although the Court has referenced certain arguments and facts in this Memorandum and Order from the sealed papers submitted by the parties (as is necessary to explain to the public the grounds for the motion and the court's reasoning), such as the Wallenstein Declaration and Keating Affirmation, these underlying submissions by the parties will remain under seal.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall mail a copy of this Memorandum and Order to petitioner.

Petitioner has filed a separate motion to reduce his sentence under 18 U.S.C. § 3582(c). That pending motion will be decided in due course.

SO ORDERED.

/s/ Joseph F. Bianco

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: July 11, 2025
    Central Islip, New York

* * *

Petitioner is proceeding *pro se*, Lewisburg, U.S. Penitentiary, P.O. Box 1000, Lewisburg, PA, 17837.    Respondent is represented by Assistant United State Attorney John Durham, United States Attorney's Office for the Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722.

14